UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

DUKE DOUGLAS,

                              Plaintiff,

v.                                             Case No. _____

JOHNSON HEALTH TECH TRADING,
INC. and BOWFLEX INC.,

                              Defendant.

---

## COMPLAINT

Plaintiff Duke Douglas ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Johnson Health Tech Trading, Inc. ("Johnson") and BowFlex Inc. ("BowFlex") based on personal knowledge as to himself, the investigation of his counsel, and on information and belief as to all other matters.

### NATURE OF ACTION

1. This case concerns a deceptively dangerous product and its manufacturers' inadequate recall efforts. After selling roughly 3.8 million of their popular Bowflex Adjustable Dumbbells Defendants announced a nationwide recall instructing their customers to stop using them immediately because weight plates can dislodge during use, posing a hazard to consumers. Scores of consumers have been injured, as the defect causes the weights to dislodge from the dumbbell and fall on the user, concussions, abrasions, broken toes, and contusions. And yet, Defendants refuse to give their money back for these products, instead only offering vouchers, replacement units, and digital fitness memberships. This is a case of protecting the bottom line at all costs.

2.     On June 5, 2025, Defendants and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of roughly 3,844,200 BowFlex 552, 52.5 LB and BowFlex 1090, 90 LB Adjustable Dumbbells (the "Products").[1]  Consumers were warned to "immediately stop using the recalled Bowflex adjustable dumbbells" because the Products' weight "plates can dislodge during use."  The recall notice stated that "Johnson Health Tech Trading ha[d] received 12 reports of the plates dislodging during use with no injuries for units it sold[,]" and BowFlex had "received 337 reports of the plates dislodging during use for units it sold, including 111 resulting in injuries such as concussions, abrasions, broken toes or contusions." The potential of the Products' weight plates to dislodge while in use is referred to herein as the "Defect."

3.     Defendants refuse to refund customers that purchased the Products.  Instead, Defendants implemented a deficient recall that allows them to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

4.     Any requests for full refunds are denied.  Consumers only have two options:  (1) receive a replacement dumbbell set made by Defendant; or (2) receive either a voucher for the full purchase price, or a prorated voucher with a one-year JRNY digital fitness membership. Consumers did not bargain for expensive weights, where the plates could dislodge and injure them without notice.

5.     By design, the recall received very little publication, with the result that the response rate has been low. And, an offer of a voucher that can only be used to purchase another product from Defendants, guarantees that customers who have lost faith in Defendants' products, or who do not want to risk being injured by dislodged weight plates, are left with no recourse.

---

[1] https://www.cpsc.gov/Recalls/2025/Johnson-Health-Tech-Trading-Recalls-BowFlex-Adjustable-Dumbbells-Due-to-Impact-Hazard-Including-3-7-Million-Sold-by-Nautilus-Inc

Further, consumers whose Products were discarded are also left without recourse. This approach benefits Defendants by minimizing the cost and burden of the recall.

6. Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendants' Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

7. Plaintiff Duke Douglas is a South Milwaukee, Wisconsin resident. Plaintiff Douglas purchased a Bowflex Select Tech 552 Adjustable Dumbbell set that is part of the June 5, 2025, CPSC Recall online from Amazon.com on August 26, 2023 for $379.00. The Product has the following serial number: 100182SFE230701409. Plaintiff experienced a manifestation of the defect, and due to the recall has stopped using the Product.

8. Before purchasing the Product, Plaintiff reviewed the Products' item details, descriptions, product specifications and features. Defendants' materials failed to disclose the existence of the defect at issue in this action. Neither the Products' packaging, labeling, or any other information surrounding the Product on Amazon.com disclosed or suggested in any way that the Product contained the Defect. If the Product's labeling, packaging, or web content had disclosed the Defect, then Plaintiff would not have purchased the Product, or would not have purchased the Product on the same terms.

9. Defendant Johnson Health Tech Trading, Inc. is a Wisconsin corporation, with its registered agent and principal place of business located in Cottage Grove, Wisconsin.

10. Defendant' BowFlex Inc. is a Washington corporation, with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendants.

12. This Court has general jurisdiction over Johnson because it is incorporated in Wisconsin. Further, the Court has general jurisdiction over Johnson because it conducts substantial business within Wisconsin such that it has significant, continuous, and pervasive contacts with the State of Delaware.

13. This Court has specific jurisdiction over BowFlex because it regularly conducts business in this District and has extensive contacts with this forum.

14. Venue is proper pursuant to 28 U.S.C. § 139 because Defendants transact substantial business in this District.

## FACTUAL ALLEGATIONS

15. **Product at issue:** the BowFlex 552, 52.5 LB and BowFlex 1090, 90 LB Adjustable Dumbbells at issue in this case were sold nationwide at major retailers like Johnson Fitness & Wellness, DICK's Sporting Goods, Best Buy and other stores, and online at Amazon.com and Bowflex.com from 2004 through May 2025 for between $200 to $800. There were approximately 3,844,200 units sold during this period in the United States. The recall includes the following models:

| Model | Serial Number Range |
|---|---|
| BowFlex 552 Adjustable Dumbbells | 00182M243902233 – 00182M243902592<br>00182MAG220200463C – 00182MAG221204535C<br>00182SFE213414844C – 00182SFE234002231C<br>100182M242800001 – 100182M250201440<br>100182MAG20431227C – 100182MAG233500372<br>100182P244100067 – 100182P244602976<br>100182SFE213709609 – 100182SFE235206276<br>100748M243200001 – 100748M244300252<br>100748MAG222400734 – 100748MAG23500660<br>100748P242900001 – 100748P245205632<br>100748SFE220908785 – 100748SFE233513811<br>X00748MAG233003670 – X00748MAG233003672<br>X00748SFE233202493 – X00748SFE233203161<br>Z00748MAG233003670 |
| BowFlex 1090 Adjustable Dumbbells | 4551MAG21452813 – 4551MAG23350381<br>4551SFE23320001 – 4551SFE23501949 |

16. Below are photos of the Products:



17. **Defect at issue:** As stated by Defendants: "the [weight] plates dislodge[e] during use."

18. The Defect affects all of the Products at issue. Defendants and the CPSC have stated that "[c]onsumers should immediately stop using the recalled Bowflex adjustable dumbbells."

19. The cause of the Defect is the same for all of the products at issue.

20.     **Relevant time period:**  All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times during the last four years, at least.  There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

21.     **The omissions and misrepresentations:**  Defendants described the Products as adjustable dumbbells with easy-to-use selection dials for adjusting weights that allowed users to rapidly switch from one exercise to the next with a turn of a dial.  The Products were advertised as ergonomic and compact alternatives to traditional dumbbell sets.  These representations were made everywhere the Products were sold, including on Amazon.com, bowflex.com, and on the Products packaging in brick-and-mortar stores.  However, these representations were false and misleading, as the Product were not suitable for use as adjustable dumbbells.  Defendants failed to disclose that the weight plates were susceptible to "dislodging during use[.]" There is no warning of any kind anywhere on the Products' labels, on websites where the Products are sold, or the Products themselves.

22.     The omission and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

23.     Plaintiff and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

24.     Defendants did not disclose the Defect on the product packaging or labeling or any other customer-facing document or display. Retailers' sales personnel and customer service representatives did not disclose the Defect either.

25.     At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendants had exclusive knowledge of that fact.

26.     Defendants made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, Defendants marketed the Products as suitable and ergonomic alternatives to traditional dumbbells, while knowing that those representations were not true and failing to disclose the Defect.

27.     **Defendants' Pre-sale Knowledge of the Defect**:  Defendants were aware of the defect at the time of sale.  Indeed, it took more than 300 consumer complaints regarding the Defect, and more than 111 injuries, before Defendants finally issued a recall.

28.     Before the products were first launched, Defendants knew about the defect as a result of pre-release testing.

29.     After launch in 2004, Defendants monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendants, replacement part data, field reports, and CPSC correspondence. Defendants knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendants made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

30.     The customer complaints about the Products put Defendants on notice of the Defect and contributed to their pre-sale knowledge of the Defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the Products was unusually high relative to the total number of products sold. The fact that so many consumers made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Products. The reports and complaints from

consumers were similar enough to put Defendants on notice that the incidents described were the result of a defect, and the Products were experiencing unusually high levels of complaints about the defect. And yet, Defendants waited until they received more than **300 complaints of the weight plates dislodging, including 111 reports of injuries, including concussions, abrasions, broken toes, or contusions**, before issuing its Recall.

31. Defendants also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendants adhere to that practice.

32. For instance, a July 23, 2021 report on CPSC's website shows that a consumer reported that while using the BowFlex 1090 adjustable dumbbells, "a large plate on the left dumbbell fell off landing on [his] foot" and "fracturing [his] middle toe."

33. Another consumer, in a November 15, 2020 report to the CPSC, described a very similar experience:

> I purchased a set of Bowflex Selecttech 1090 dumbbells that have been lightly used for maybe 10 workouts total. During my workout yesterday, the heaviest plate (50 lbs) detached from the handle while I was doing a bench press and grazed my face, causing pain and some swelling. Upon inspection, the plastic (yes, they used plastic) disc that is supposed to latch onto the plate shows signs of cracking and fatigue, and shifts around 1mm. Two other discs show signs of fatigue as well. These dumbbells have never been dropped and are stored in the cradle provided. If they had failed slightly further in my movement the injury could have been serious and broken my nose, caused and orbital fracture, or worse. Plates detaching from these dumbbells should *not* be an acceptable failure mode.

34. On August 4, 2021, another consumer reported:

> I have a set of Bowflex 1090 dumbells, where the weights keep falling off. This has occurred multiple times, but it was not until today that I discovered the reason. It is because of a poor design. Luckily, no injuries occurred, but, had the roughly 20 pound weight had fallen on my face, it could have caused severe injury.

35.     On May 16, 2019, a consumer reported to the CPSC:

I was using the BowFlex SelecTech 1090 Adjustable Dumbbell (by Nautilus), performing overhead shoulder presses. As I completed the exercise and was bringing the dumbell down to re-rack it, the largest weight plate (15lbs) fell off and landed on my foot. The malfunction resulted in the break of my second metatarsal bone in my left foot. In doing some research, it appears that the product was recalled in 2011 for this specific problem. I purchased the product in August of 2014 via Amazon. It is obvious the recall did not fix the inherent design flaw. The product design is flawed as the weight plates are 'secured' to the dumbbell bar via a small plastic lip that relies on tension and gravity to keep it from falling off. If the manufacture used a modified design that actually hooked the plate to the bar, the plate would never have fallen off. This product should be recalled IMMEDIATELY to prevent others from being injured. It should NOT be allow back on the market until the manufacturer changes the design of its securing mechanism to eliminate the possibility of plates falling off of the bar.

36.     Likewise, on October 2, 2018, a consumer reported that:

I purchased a Nautilus/Bowflex serial number 001-4551mag15490035. The dumbells are extremely dangerous -- when I lift them off the stand one of the 10lb plates falls off onto the floor and misses my foot by inches. A plate can fall off when dumbell is overhead as well.

37.     Similarly, on July 15, 2018, a consumer reported:

I was performing lateral dumbbell raises when plates fell off of the dumbbells. This has also happened when performing dumbbell curls and other exercises periodically over the past few months. The dumbbells have never been dropped. No injuries we're sustained as I have been able to dodge the falling plates when this occurs. Customer support has suggested periodically checking the alignment, but this does not prevent the issue for more than a couple weeks at a time.

38.     The CPSC and Defendants received dozens of similar complaints between 2011 and 2025. Taking the CPSC complaints, together with the 300+ complaints reported by Defendants, it is clear that Defendants had knowledge of the defect yet continued to sell the Products to consumers just the same.

39. Moreover, in 2012 approximately 17,000 units of the BowFlex SelectTech 1090 Dumbbells were recalled for the exact same issue.[2] At that time, consumers were offered repair kits to resolve the issue. However, as described herein, Defendants continued to sell products that suffered from the same defect for more than a decade.

**No Adequate Remedy At Law:**

40. Plaintiff and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

41. Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

42. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

43. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendants wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

44. Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

---

[2] https://www.cpsc.gov/Recalls/2012/nautilus-recalls-bowflex-dumbbells-due-to-injury-hazard

45. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**The Recall Does Not Render This Lawsuit Moot:**

46. The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

47. Under the recall, Defendants will only provide vouchers, or a replacement dumbbell set made by Defendants for those who purchased from Johnson or a prorated voucher and a digital fitness membership for those who purchased from BowFlex. No cash refunds are provided, partial or otherwise. These options are not viable for people like Plaintiff who no longer trust the reliability of Defendants' products and do not wish to continue to do business with them, or those who no longer have the Products because they disposed of it due to the defect.

48. The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## CLASS ALLEGATIONS

49. ***Class Definition*:** Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

   a. <u>Nationwide Class</u>: all people in the United States who purchased one of the Products.

   b. <u>Wisconsin Subclass</u>: all people who purchased a subject Product in Wisconsin.

50. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or

narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

51. Excluded from the putative classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

52. ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants, their retailers, their agents, or other means.

53. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

   a. Whether Defendants knew or should have known of the Defect at issue in this case, and if so, when it discovered the Defect;

   b. Whether knowledge of the Defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

   c. Whether Defendants failed to disclose and concealed the existence of the Defect from potential customers; and

   d. Whether Defendants' conduct, as alleged herein, violates the consumer protection laws asserted here.

54. ***Typicality.*** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct, based

upon Defendants' failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

55.  ***Adequacy***. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

56.  ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

57.  Without a class action, Defendants will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## FIRST CAUSE OF ACTION
### Violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat., § 100.18 *et seq.*

58.  Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.  Plaintiff brings this cause of action individually and on behalf of members of the Wisconsin Subclass.

60. Defendants' conduct violated Wis. Stat. § 100.18, which provides, that no "firm, corporation or association . . . with intent to sell, distribute, increase the consumption of . . . any . . . merchandise . . . directly or indirectly, to the public for sale . . . shall make, publish, disseminate, circulate, or place before the public . . . in this state, in a . . . label . . . or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public . . . which . . . contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

61. Defendants falsely, deceptively and misleadingly represented and advertised that the Products that they marketed and sold during the Class Period were suitable for use as dumbbells.

62. 360. Defendants misled consumers by continuing to sell the Products and failing to disclose to consumers such as Plaintiff and the Wisconsin Subclass the Products suffered from a defect that could cause the weight plates to dislodge during use. Defendants owed a duty to disclose the fact that the Products suffered from the Defect.

63. Defendants' conduct was deliberately and objectively deceptive, and had the capacity to deceive reasonable consumers under the circumstances. The fact that the Products Defendants marketed and sold during the Class Period suffered from a defect that could cause the weight plates to dislodge during use was a material fact to which a reasonable consumer would attach importance at the time of purchase. Plaintiff and the Wisconsin Subclass relied upon Defendants' deceptive, misleading, and unlawful marketing practices.

64. As a direct and proximate result of Defendants' violations of the Wisconsin Deceptive Trade Practices Act, Plaintiff and other members of the Wisconsin Subclass have suffered pecuniary losses under Wis. Stat. § 100.18(11)(b)(2), which include but are not limited

to, the costs they incurred paying for a product which was not the one that had been represented to them, and the fact that the product they received (a defective adjustable dumbbell set) was less valuable than the product represented to them (a fully functional adjustable dumbbell set).

65. Plaintiff seeks all available relief under this cause of action including, but not limited to, injunctive and declaratory relief, actual damages, costs, reasonable attorney's fees and punitive damages.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

66. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

67. Plaintiff brings this cause of action individually and on behalf of members of the Nationwide Class.

68. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

69. The unjust enrichment claims are premised on Defendants' pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

70. Plaintiff and the Class Members conferred a benefit on Defendants in the form of the gross revenues Defendants derived from the money Plaintiff and Class Members paid to Defendant.

71. Defendants knew of the benefit conferred on them by Plaintiff and the Class Members.

72. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendants omitted that the Products

were dangerous. This caused injuries to Plaintiff and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

73. Defendants accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

74. Defendants have profited by retaining the benefit under circumstances which would make it unjust for Defendants to retain the benefit.

75. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendants' sale of the Products.

76. As a direct and proximate result of Defendants' actions, Plaintiff and Class Members have suffered in an amount to be proven at trial.

77. Putative Class Members have suffered an injury in fact and have lost money as a result of Defendants' unjust conduct.

78. Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of their unjust conduct.

### THIRD CAUSE OF ACTION
### Fraud by Omission / Intentional Misrepresentation

79. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

80. Plaintiff brings this cause of action individually and on behalf of members of the Nationwide Class.

81. This claim is based on fraudulent omissions and misrepresentations concerning the safety, reliability, and durability of the Products. As discussed above, Defendants failed to disclose

that the Products had a dangerous defect, while advertising that the Products were ergonomic alternatives to traditional dumbbells.

82. The false and misleading omissions and misrepresentations were made with knowledge of their falsehood. Defendants are nationwide manufacturers and distributors, routinely undergo product testing, and must have known about the Defect prior to sale. Nonetheless, Defendants continued to sell the defective Products to unsuspecting consumers.

83. The false and misleading omissions and misrepresentations were made by Defendants, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Products.

84. The fraudulent actions of Defendants caused damage to Plaintiff and Class Members, who are entitled to damages and punitive damages.

85. Plaintiff seeks all relief available under this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of undersigned counsel as counsel for the classes;

D. A declaration that Defendants' actions complained of herein violated the statutes referenced herein;

E. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

F.      For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiff and the class members, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful acts described above;

G.      For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H.      For prejudgment interest on all amounts awarded;

I.      For an order of restitution and all other forms of equitable monetary relief;

J.      For an order awarding Plaintiff and class members their reasonable attorney fees, expenses, and costs of suit.

K.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

**SMITH KRIVOSHEY, PC**

Date: June 13, 2025

*/s/ Brittany S. Scott*
Brittany S. Scott
Smith Krivoshey, PC
166 Geary Street, Suite 1500-1507
San Francisco, CA 94108
Telephone: (415) 839-7077
Facsimile: (888) 410-0415
E-Mail: Brittany@skclassactions.com

*Attorneys for Plaintiff*